BARKETT, Circuit Judge,
dissenting from the denial of rehearing en banc:
The panel decision in this case holds that a defendant may not raise Blakely v. Washington, — U.S.-, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004) on direct review unless it was raised in the initial appellate brief.[1] Levy says that if it was not raised in the initial brief, the issue has been “waived.” I do not see how we can fairly or legally preclude litigants from making Blakely arguments in their post-initial submissions in light of two extraordinarily significant facts, amplified below. First, waiver applies only to those situations where a defendant could have raised an issue in his initial brief but failed to do so. Levy could not have raised a Sixth Amendment objection to his sentencing because in United States v. Sanchez, 269 F.3d 1250, 1262 (11th Cir.2001), three years before Blakely was handed down, we held that Apprendi does not apply to the Federal Sentencing Guidelines. This differentiates the instant case from our precedents in United States v. Nealy, 232 F.3d 825 (11th Cir.2000) and United States v. Ardley, 242 F.3d 989 (11th Cir.2001), on both of which the Levy panel relies. Second, Griffith v. Kentucky, 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987), which makes newly declared rules of criminal procedure applicable to all cases still pending on direct review, dictates that Levy be given the opportunity to raise his Blakely claims before this court.
I. Griffith Applies to All Pipeline Cases The Supreme Court has held that “failure to apply a newly declared constitutional rule to criminal cases pending on direct review violates basic norms of constitutional adjudication.” Griffith, 479 U.S. at 322, 107 S.Ct. at 713. The Griffith Court stated that “after we have decided a new rule in the case selected, the integrity of judicial review requires that we apply that rule to all similar cases pending on direct review.” Id. at 322-23, 107 S.Ct. at 713. In so holding, the Court made clear that it would not harbor an exception to retroac-tivity for cases in which the new rule constituted a “clear break” with the past. Id. at 328, 107 S.Ct. at 716.
Our internal circuit rules for how and whether an issue can be raised on appeal cannot override the concerns about fundamental fairness and the integrity of judicial review that the Supreme Court identified in Griffith. If the “failure to apply a newly declared constitutional rule to criminal cases pending on direct review violates basic norms of constitutional adjudication,” id. at 322, 107 S.Ct. at 713, surely that failure would violate constitutional norms as much in the case of a defendant who failed to raise a new rule of criminal procedure that was not available when he filed his initial appellate brief as it would in the case of a defendant who did anticipate the new rule.
It so happens that in Griffith, the defendant did manage to preserve his Batson objections to the prosecutor’s use of peremptory challenges. But there is no basis in Griffith or elsewhere to conclude that *1352 the decision applies only to defendants who have preserved their constitutional challenges, whether during trial, throughout direct review, or both. The Griffith Court granted certiorari to answer the question “whether the ruling in Batson applies retroactively to a state conviction pending on direct review at the time of the Batson decision.” Griffith, 479 U.S. at 318, 107 S.Ct. at 710-11. Griffith neither posed nor answered the more limited question of whether Batson applies retroactively only to a defendant who has preserved his objection to a prosecutor’s peremptory challenges. Rather, summarizing its prior case law, the Court observed that
in a number of separate opinions since Linlcletter, various Members of the Court have asserted that, at a minimum, all defendants whose cases were still pending on direct appeal at the time of the law-changing decision should be entitled to invoke the new rule.
Griffith, 479 U.S. at 322, 107 S.Ct. at 712 (quoting United States v. Johnson, 457 U.S. 537, 545 and n. 9, 102 S.Ct. 2579, 2584-85 and n. 9, 73 L.Ed.2d 202 (1982) (Harlan, J.) (internal quotations omitted) (emphasis added)). The Court distinguished not between defendants who preserved their Batson objections and those who failed to, but rather between “cases that have become final and those that have not.” Griffith, 479 U.S. at 322, 107 S.Ct. at 713. The Griffith Court went on to hold that
[i]n Justice Harlan’s view, and now in ours, failure to apply a newly declared constitutional rule to criminal cases pending on direct review violates basic norms of constitutional adjudication ... [Ajfter we have decided a new rule in the case selected, the integrity of judicial review requires that we apply that rule to all similar cases pending on direct review.
Id. at 322-23, 107 S.Ct. at 712-13 (emphasis added).
There are no exceptions to the Griffith rule. It is true that prior to Griffith, in Johnson, the Supreme Court acknowledged three exceptions to the rule of retro-activity in the criminal procedure context. The first two were not at issue in Griffith and are not at issue here.[2] The third exception — where a new rule constitutes a “clear break” with past precedent — was at issue in the line of retroactivity cases leading up to Johnson and Griffith, but the Griffith Court refused to leave any room for this exception. Instead, the Court reiterated the absolute breadth of its holding:
We therefore hold that a new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final, with no exception for cases in which the new rule constitutes a “clear break” with the past.
Id. at 328, 107 S.Ct. at 716 (emphasis added). Any attempt to read into Griffith an unarticulated fourth exception — for defendants who failed to preserve Batson (or Apprendi, etc.) objections — is unconvincing.
II. Sanchez Foreclosed Levy’s Apprendi Claim
The panel’s refusal to apply the newly declared Blakely rule here is all the less justified given that Levy’s “failure” to *1353 raise his Sixth Amendment right to a jury trial to challenge his federal sentencing enhancements was dictated by this very court. Prior to Blakely, this court, along with every other appellate court in the nation, had held that Apprendi did not apply to the Federal Sentencing Guidelines. See Sanchez, 269 F.3d at 1262 (“Ap-prendi does not apply to judge-made determinations pursuant to the Sentencing Guidelines”). See also United States v. Nealy, 232 F.3d 825, 829 n. 3 (11th Cir. 2000) (“The Sentencing Guidelines are not subject to the Apprendi rule.”); United States v. Harris, 244 F.3d 828, 829-30 (11th Cir.2001) (holding that Apprendi does not apply to the relevant conduct provision of the Sentencing Guidelines); and United States v. Diaz, 248 F.3d 1065, 1105 (11th Cir.2001) (noting that “Sentencing Guideline issues are not subject to the Apprendi rule and, thus, there is no requirement that sentencing facts be submitted to a jury and found beyond a reasonable doubt”).[3] Accordingly, how could we possibly consider “waived” an issue that we have already decided?
Even though criminal defendants before Blakely would have had absolutely no reason to raise Apprendi in connection with the Federal Guidelines (given our holding in Sanchez), the panel penalizes defendants for not having the foresight to predict Blakely:
[Wjhile Levy may not have predicted the Supreme Court’s ultimate conclusions in Blakely, it is also true that the general argument that a jury must determine all facts regarding sentence enhancements was available to Levy and indeed made by defendants ever since the Sentencing Guidelines came into being.
Levy, 379 F.3d at 1243. In fact, however, that “general argument” — which is more accurately described as the specific holding and very point of Blakely, albeit not necessarily with reference to the Federal Guidelines — was not available to Levy, because we took it away from him in Sanchez. The panel derived its “general argument” argument from our decision in McGinnis v. Ingram Equipment Company, 918 F.2d 1491 (11th Cir.1990). In that case, we held that an employer had waived its right to argue that discriminatory demotion and discharge were not actionable under § 1981 by failing to raise those issues at trial, even though an intervening Supreme Court decision (Patterson) that made those issues available was not decided until after trial. But the panel neglects to address a cardinal difference between McGinnis and the instant case: there was no equivalent of Sanchez in McGinnis. The employer in McGinnis, that is, was not already on notice prior to Patterson that it would be futile to attempt to argue before this court that § 1981 did not extend to claims of discriminatory demotion and discharge.
The panel nonetheless argues that by not raising in their initial appellate briefs a “Blakely-type claim” — a phrase that hardly captures the radicalism of Blakely’s holding — defendants waive their right to invoke Blakely. But the panel never clarifies exactly what it means by a “Blakely-type claim.” Had it done so, the panel would have been forced to confront the practical significance of our holding in Sanchez. Is a claim challenging the application of the Federal Sentencing Guidelines in light of Apprendi a “Blakely-type claim”? If so, could there be any reason why a defendant, after Sanchez, would see any reason to raise Apprendi for this pur *1354 pose before the Eleventh or any other Circuit? This is the classic case of a catch-22: defendants can only raise Blakely if they have already raised Apprendi, and yet this court (and every other circuit) said specifically that they couldn’t have raised Apprendi!
If Levy could not have raised Apprendi in his initial appellate brief, in accordance with our case law, I do not see how we can prevent him from raising Blakely in a post-initial submission.[4] To this consideration, I would add that virtually every commentator in the land who has addressed Blakely, including Justices O’Connor and Breyer in their dissents, has emphasized the dramatic novelty of the decision and its potential to reshape the nation’s criminal law system. See Blakely, 124 S.Ct. at 2548-49, 2562.
III. The Procedural Bar Rule Cannot Override Griffith
The panel opinion ignores both of the above points in favor of reciting the various cases in which we have denied appellants the ability to raise new issues not covered in their initial briefs on appeal. As noted above, the vast majority of these cases did not involve a new rule of criminal procedure that the Supreme Court announced after a defendant filed his initial appellate brief. The panel relies on Nealy, however, for the proposition that supplemental briefs can be authorized “only when intervening decisions or new developments arise after the moving party’s brief has been filed and only when that new authority relates to an issue or issues already properly raised in the party’s initial brief.” Levy, 379 F.3d at 1243 (summarizing Nealy, 232 F.3d at 830) (emphasis added).
As the panel notes, Nealy was based on Fed. R.App. P. 28(a)(5), which requires an appellant’s initial brief to contain “a statement of the issues presented for review.” The panel argues that to allow a new issue to be raised in a petition for rehearing, supplemental brief, or reply brief would “circumvent” this rule. The procedural bar rule of Nealy, however, does not serve as its own authority, but derives its legitimacy from the extent to which it serves other legal and institutional values. As such, the rule is subject to countervailing legal and institutional norms. In the circumstances of this case, the panel’s reading of Fed. R.App. P. 28(a)(5) would raise a serious constitutional problem, since it would conflict with the absolute rule of retroactivity that the Supreme Court announced in Griffith. To avoid a constitutional conflict with Griffith, Fed. R.App. P. 28(a)(5) should be read to exclude issues that are raised by a new rule of criminal procedure announced after a defendant has filed his initial appellate brief. Such a reading comports with the rule of statutory interpretation set forth in Edward J. DeBartolo Corp. v. Florida Gulf Coast Bldg. & Const. Trades Council, 485 U.S. 568, 575, 108 S.Ct. 1392, 1397-98, 99 L.Ed.2d 645 (1988) (“where an otherwise acceptable construction of a statute would raise serious constitutional problems, the *1355 Court will construe the statute to avoid such problems unless such construction is plainly contrary to the intent of Congress.”). The Federal Rules of Appellate Procedure are statutory law subject to the DeBartolo rule, and there can be no doubt that Griffith, is a constitutional holding.[5]
The panel also notes that even where an appellant, pursuant to Fed. R.App. P. 28(j), wishes to file a relevant supplemental authority that “come[s] to light after a party’s initial brief was filed,” Levy, 379 F.3d at 1244, the supplemental letter must refer either to a page of the initial brief or to a point argued orally. The suggestion is that even supplemental authorities filed by letter are only permitted where they relate to an issue flagged in the initial brief (or in oral argument). Fed. R.App. 28(j) does indeed require that supplemental authorities refer to a page of the initial brief or to a point argued orally, but it refers generally and loosely to all “pertinent and significant authorities [that] come to a party’s attention after the party’s brief has been filed” (emphasis added)— not to issues affirmatively raised by new rules of criminal procedure announced by the Supreme Court after the party’s initial brief has been filed. To suggest that Blakely is a case that has simply “come to [Levy’s] attention” since it was announced by the Supreme Court is something of a euphemism.
Moreover, even on its own terms, Nealy does not clearly extend to the facts of the instant case. Nealy involved a defendant who argued at trial that he could not be sentenced pursuant to a federal statute that distinguished sentencing máximums based on drug quantity unless the fact of drug quantity was submitted to the jury. After Apprendi was handed down, the defendant sought to argue for the first time that the indictment must include the element of drug quantity. Nealy held that the defendant could not thus raise the “totally new” issue of his indictment where his initial brief had only raised a question as to his sentence. Nealy, 232 F.3d at 830. In this ease, Levy has already raised the validity of the trial court’s vulnerable victim enhancement during sentencing, albeit on the basis of testimony that Levy argues should not have been admitted. He is not extending his legal challenge to an entirely separate aspect of the criminal proceedings leading to his conviction and sentence. Rather, he seeks to apply a newly declared constitutional rule to an aspect of those proceedings he has already challenged: the application of the Federal Sentencing Guidelines to his case.
Although comparable issues were debated in United States v. Ardley, 273 F.3d 991 (11th Cir.2001),[6] that case is also inapplicable. Ardley applied the procedural bar rule to an Apprendi claim even after the Supreme Court remanded to us with instructions to reconsider a prior panel opinion in light of Apprendi. But the defendant in Ardley had available to him at the time of his initial brief a “general argument” that was subsequently elevated into a new rule of criminal procedure by the Supreme Court. As already noted, in this case Levy had no such “general argument” available to him at the time of his initial *1356 brief because our decision in Sanchez had taken away his ability to invoke Apprendi to challenge the application of the Federal Sentencing Guidelines. This exceptional situation distinguishes the instant ease from Ardley, McGinnis, Nealy, and indeed every other case cited by the Levy panel.
IV. The Procedural Bar Rule Frustrates Efficiency Concerns in this Context
The panel decision has the unanticipated consequence of frustrating rather than promoting the judiciary’s interest in conserving its scarce resources. As the panel decision notes, the procedural bar rule “serves valuable purposes.” Levy, 379 F.3d at 1244 (quoting Presnell v. Kemp, 835 F.2d 1567, 1573-74 (11th Cir.1988)). One of these purposes is to “conserve judicial and parajudicial resources.” Presnell, 835 F.2d at 1573. By requiring defendants to raise foreclosed issues over and over again, no matter how unambiguously this court has already decided those issues, Levy gives criminal defendants an incentive to flood the federal courts of this circuit with countless claims that are clearly foreclosed by current precedent, just as Levy’s Apprendi claim was clearly foreclosed by Sanchez. The district courts (and this court) will then be forced to address those claims over and over again. This is not a very effective way of conserving scarce judicial resources.
Moreover, the Supreme Court has rejected' — albeit in a different context (that of plain error)' — the panel’s view that defendants should be forced to raise objections that are clearly without merit in light of current precedent, simply in order to be able to preserve their claims on appeal. In Johnson, the defendant raised for the first time on appeal an intervening Supreme Court authority, U.S. v. Gaudin, 515 U.S. 506, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995), that requires a trial court to submit the issue of materiality in a perjury prosecution to the jury. The trial court had decided this issue itself, consistent with the state of the law at the time, and the defendant (as one would expect) failed to object at trial. In deciding what it would take to establish “plain” error in these circumstances, the Johnson Court observed as follows:
The Government contends that for an error to be “plain,” it must have been so both at the time of trial and at the time of appellate consideration. In this case, it says, petitioner should have objected to the [trial] court’s deciding the issue of materiality, even though near-uniform precedents both from this Court and from the Courts of Appeals held that course proper. Petitioner, on the other hand, urges that such a rule would result in counsel’s inevitably making a long and virtually useless laundry list of objections to rulings that were plainly supported by existing precedent. We agree with petitioner on this point ...
Johnson, 520 U.S. at 467-68, 117 S.Ct. at 1549. Thus, it seems that the Supreme Court has rejected the reasoning that underlies the panel’s position and found that it is neither just nor efficient to expect a defendant to raise objections even where “near-uniform precedent” of the Supreme Court and the Courts of Appeals forecloses those objections. As noted earlier, prior to Blakely, this and every other circuit court in the nation had held that Apprendi does not apply to the Federal Guidelines.
For the foregoing reasons, I dissent.

. United States v. Levy, 379 F.3d 1241 (11th Cir.2004). Although I agree, and joined a panel in In re Dean, 375 F.3d 1287 (11th Cir.2004) to hold, that Blakely does not apply retroactively to a criminal case on collateral review, I think that a criminal case still pending on direct appeal — a pipeline case — is an entirely different matter.

. The Griffith Court found that in the first two categories, "the new rule already was retroactively applied: (1) when a decision of this Court did nothing more than apply settled precedent to different factual situations ... and (2) when the new ruling was that a trial court lacked authority to convict a criminal defendant in the first place.” Griffith, 479 U.S. at 324, 107 S.Ct. at 714 (emphasis added). Thus, these two categories cannot be used to say anything about Griffith, let alone the instant case.

. The unanimous agreement of our sister circuits on this point is documented in Justice O'Connor's dissenting opinion in Blakely. See Blakely v. Washington, — U.S.-, -n. 1, 124 S.Ct. 2531, 2547 n. 1, 159 L.Ed.2d 403 (2004).

. One month after Levy was decided, this court held in United States v. Reese, 382 F.3d 1308 (11th Cir.2004), that Blakely does not apply to the Federal Guidelines. Levy was thus decided at a time when the application of Blakely in this circuit was not yet clear. As the Supreme Court, on October 4, 2004, has recently heard argument on this question, we will soon know whether our ruling in Reese will hold up. The point here is that we cannot now foreclose defendants from making a Blakely argument on direct appeal. Moreover, if we do not now resolve the question of how to apply new constitutional rulings to pending direct appeals, we will have to face this issue again when the Supreme Court clarifies Blakely.

. As noted above, Griffith held that "failure to apply a newly declared constitutional rule to criminal cases pending on direct review violates basic norms of constitutional adjudication.” Griffith, 479 U.S. at 322, 107 S.Ct. at 713. The Griffith Court based this holding on, inter alia, the "cases” and "controversies” requirement of Article III, § 2.

. For the reasons expressed in our respective dissents to the denial of rehearing en banc in that case, both Judge Tjoflat and I believe that Ardley was wrongly decided. It is worth noting that our sister circuits have not adopted versions of the Ardley and Nealy rule.